## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| ROBERT C. ALLAN, *ET. AL.*, | |
| PLAINTIFFS, | |
| v. | CIVIL ACTION NO.: 17-0338 (RJL) |
| ISLAMIC REPUBLIC OF IRAN, | |
| DEFENDANT. | |

## DOJ'S STATUS REPORT REGARDING RECORDS
## REQUESTED IN PLAINTIFFS' SUBPOENA

A third-party to this suit, the United States Department of Justice ("DOJ"), on behalf of its

component the Federal Bureau of Investigation ("FBI"), hereby files this Status Report regarding

the records requested in, and its anticipated response to, (i) the subpoena issued to the FBI by

Plaintiffs on March 30, 2018 ("March 30 Subpoena") and (ii) this Court's March 28, 2018, Order

("March 28 Court Order") mandating FBI's production of records in response to this subpoena.[1]

---

[1] This Status Report is being filed pursuant to the request made by the DOJ in its Motion to Stay [ECF No. 43], which requested that the Court issue a temporary stay to permit the DOJ to continue its analysis of the TWA-related witness records in its possession that are requested in the March 30 Subpoena. The proposed order filed with the DOJ's Motion to Stay contained language stating that the DOJ would file a Status Report by no later than June 7, 2018, advising the Court of (i) the status of its document analysis and determination regarding what, if any, records could be produced and (ii) "a proposal for next steps in these proceedings, including whether the Court should enter a date for DOJ to submit its reply brief in further support of its Motion to Quash and to Vacate [ECF No. 36]."

Consistent with this request, the DOJ now files this Status Report and further notes the following: (i) the DOJ does not believe the Court should enter a date for the DOJ to submit its reply brief in support of its Motion to Quash and Vacate because, after the production of records as described in this Status Report and subsequent discussions between Plaintiffs and the DOJ, the Motion to Quash may ultimately become moot. The DOJ renews its request for a stay of proceedings and requests that the period of the stay originally requested in its motion be extended by 60 days, up to and including August 6, 2018, to permit time for the FBI's document production and discussions between the DOJ and Plaintiffs.

## INFORMATION REGARDING THE REVIEW AND
## POTENTIAL PRODUCTION OF RECORDS

On March 30, 2018, Plaintiffs served the FBI with a subpoena that requested records in connection with their suit for money damages as compensation for pain and suffering resulting from the June 14, 1985 hijacking of TransWorld Airlines ("TWA") Flight 847 from Athens, Greece.  Since being served with the March 30 Subpoena, employees of five DOJ components have spent more than 200 man hours analyzing the requested TWA-related case files in the FBI's possession for the individuals listed in the subpoena.

## I.     RECORDS IN THE FBI'S POSSESSION

Included below is information regarding what records, if any, the FBI possesses in each category of documents requested by Plaintiffs.  Plaintiffs' subpoena requests the following three categories of records:

1.   All interviews and medical evaluations conducted by agents or employees of the Federal Bureau of Investigation in June and July of 1985 of the [68] individuals listed [in the subpoena] who were passengers on TWA Flight 847 when it was hijacked on June 14, 1985.

2.   All other interviews of the [68] individuals listed [in the subpoena] conducted by agents or employees of the Federal Bureau of Investigation in 1987 or 1988 at the request of the Federal Republic of Germany to support the German prosecution of Mohammed Ali Hamadi[2], one of the hijackers of TWA Flight 847.

3.   All unclassified transcripts of any testimony given by the [68] individuals listed [in the subpoena] in the 1988 trial of Mohammed Ali Hamadi in West Germany.

---

[2] In the United States' indictment related to the TWA hijacking, this individual's name is spelled "Hamadei."

Listed below are the results of the DOJ's review of the TWA-related case files for the individuals listed in the subpoena:

(i)     the FBI has <u>not</u> located, and does not believe it possesses, any medical evaluations conducted by agents or employees of the FBI of any of the individuals listed in the subpoena;

(ii)    the FBI <u>does</u> possess records reflecting interviews conducted by agents or employees of the FBI in June and July of 1985 for <u>some</u> of the individuals listed in the subpoena;

(iii)   the FBI has <u>not</u> located, and does not believe it possesses, any interviews conducted by agents or employees of the FBI in 1987 or 1988 at the request of the Federal Republic of Germany; and

(iv)    the FBI has <u>not</u> located, and does not believe it possesses, transcripts of any testimony given by the individuals listed in the subpoena in the 1988 trial of Mohammed Ali Hamadi in West Germany.

With respect to interviews falling within the first category of records requested by Plaintiffs, the FBI has determined that, in most cases, the interview files that could not be located are interviews of individual hostages who were minors at the time of the TWA Hijacking; the FBI believes that such interviews were not conducted.

## II.    FBI'S DETERMINATION REGARDING POTENTIAL PRODUCTION OF RECORDS

The DOJ has determined that, given the very unique circumstances of this case (discussed in more detail below), the FBI will produce to Plaintiffs' counsel a redacted copy of certain records requested in the subpoena subject to certain objections, restrictions, and requirements, some of which are addressed below.

### A.     Unique Circumstances of This Case

First and foremost, it is imperative to acknowledge that the DOJ has serious and well-founded reasons for not producing these requested records in full and that, while it is opposed to producing any portions of the records due to its law enforcement and investigatory concerns, it has undertaken an extensive review of the records and has chosen to produce certain portions of

records as an accommodation to Plaintiffs under these very unique circumstances and for the very limited purposes described here.  The reasons for not producing records include that the specific files requested consist of some of the primary evidence and testimony that will be used in any United States prosecution of the individuals connected to the TWA Hijacking and that these records also reveal investigatory questions, leads, connections to other criminal acts and investigations, and a wealth of other information that is both crucial to protect and irrelevant to the purposes for which Plaintiffs state they need the requested records.  Moreover, in some cases, because the individual suffering the injury has since died, these interview records are the only evidence that the government has with respect to certain injuries caused by the terrorists.[3]  As such, the DOJ has a substantial and vested interest in preserving the integrity of the evidence, the integrity of its investigation, and the ability to prosecute the terrorists.

Additionally, the DOJ has decided to produce certain portions of records for the limited purpose of assisting the Special Master to calculate damages in this case, not for the further review by Plaintiffs or any other dissemination or other unapproved use by Plaintiffs or Plaintiffs' counsel.

Finally, the circumstances of this case are unique due, in part, to the fact that some Plaintiffs already possess a copy of their interview record (e.g., FBI Form FD-302s).  The DOJ does not

---

[3] While Plaintiffs have asserted that the portions of interview statements reflecting a specific individual's injuries cannot be law enforcement sensitive or otherwise protected in connection with an open investigation, this ignores the fact that the open indictment charges the terrorists with crimes that include "Conspiracy . . . to Assault Passengers and Crew" and "Assault Aboard Aircraft With Intent to Murder . . . and Resulting in Serious Bodily Injury," among other charges.  Upon prosecution of these offenses, the United States must be able to establish each element of the crime with which the individuals are charged; thus, each passenger's account of bodily harm or other injury inflicted upon them is an evidentiary statement that must be protected.  Similarly, Plaintiffs' assertion that there was a trial of one of the hijackers in West Germany in 1988 does not lessen the evidentiary significance of sensitivity of the requested records, as Plaintiffs themselves acknowledge in their Opposition to the DOJ's Motion to Quash (at 13), there are no publicly available transcripts of those proceedings or records of testimony provided under oath in those proceedings.

know precisely how many Plaintiffs received a copy of their interview record, how many still possess a copy of their interview record, or in what contexts these Plaintiffs received a copy of their interview record.  However, regardless of how many and which Plaintiffs have a copy of their interview record, the fact remains that, even when in the custody of some Plaintiffs, these documents are still government records and should not be further disseminated without the knowledge and consent of the government.

B.  **Preservation of DOJ's Objections**

By agreeing to produce portions of some of the requested records, the DOJ does not withdraw, waive, or otherwise abandon its prior objections to disclosure, including objections to disclosure based on protections provided by the law enforcement and investigative privileges, the Privacy Act, the DOJ's Touhy regulations, and any other objections to disclosure previously asserted in this case, including those arguments and objections articulated in the DOJ's Motion to Quash [ECF No. 36] and its Motion to Stay [ECF No. 43].

C.  **Necessity of a Protective Order**

Due to the content of the requested records, the fact that the records were compiled as part of a criminal investigation that remains open and that they are evidence in case subject to an open indictment under which the DOJ still intends to prosecute multiple individuals, no records can be produced without the prior agreement by Plaintiffs to a protective order ("Protective Order") separate from, and in addition to, any sealing order already issued or to later be issued by the Court in this case.  The Protective Order shall contain provisions intended to limit the parties who may access the materials – including a requirement that no Plaintiff be permitted to review the interview record of another Plaintiff – as well as, but, not limited to, necessary restrictions on the use, storage, duplication, dissemination, and publication of the produced materials. The Protective Order should also contain a provision that forbids Plaintiffs from copying the records without the knowledge

and consent of the government and requires return of all records provided by the government to Plaintiffs, as well as all copies made of these records, back to the government after the Special Master has determined the amount of damages to award to each Plaintiff.

### D.   Production Will Be Limited to Specific Information Requested by Plaintiffs

Plaintiffs assert that they are requesting records to assist the Special Master in determining the allocation of damages to the Plaintiffs, not to determine liability of the Defendant.  Further, Plaintiffs' counsel has repeatedly asserted in its filings and its communications with the DOJ's counsel that the information they seek from the FBI is limited only to information discussing the injuries and medical condition of Plaintiffs after their release from TWA Flight 847.  See, e.g., ECF No. 37: Pl's Opp. to Motion to Quash (stating "Plaintiffs' counsel are currently working to collect and submit to the Special Master evidence of the injuries Plaintiffs have suffered for the Special Master to use in preparing a report and recommendations to the Court for the award of damages to each of them.  The subpoenaed documents will be provided to the Special Master to assist him in performing that task.").[4]  Given the limited scope of Plaintiffs' request and their stated purpose for requesting the information, coupled with the sensitive nature of the records' content, the DOJ has worked to identify and isolate within each requested record in its possession the information regarding the interviewee's sustained injuries, lost property, and/or medical condition.

### E.   Records Subject to the Subpoena that Cannot Presently Be Produced

Plaintiffs have repeatedly asserted in their filings and in correspondence to DOJ's counsel that no Privacy Act protections apply because Plaintiffs are simply requesting their own records.

---

[4] Additionally, on April 13, 2018, at 10:00 am, Plaintiffs' counsel Theresa Bowman and DOJ counsel AUSA April Denise Seabrook had a lengthy call in which Ms. Bowman stated that Plaintiffs were requesting information regarding the condition of the hostages when they disembarked the plane, "information about how they looked, their injuries" and information "about what happened to them."

The DOJ has determined that this is not accurate.  Among the files being requested by Plaintiffs are the files of five individuals who are not listed as Plaintiffs to this action.  Plaintiffs have not presented any information as to why they should be entitled to such files and the Privacy Act forbids the disclosure of the files of third-parties, particularly where, as is the case here, the documents contain information regarding medical conditions of the party.

Additionally, some individuals interviewed had asked the FBI to protect their information and identities.  Those individuals would need to provide waivers prior to the release of even redacted copies of interviews related to them.

### F.    Anticipated Production Schedule

If Plaintiffs and the DOJ agree upon and file a sufficient Protective Order, then the DOJ can begin its release of the redacted records in question as described above in thirty days.

Respectfully Submitted,

JESSIE K. LIU, D.C. Bar No. 472845
United States Attorney

DANIEL F. VANHORN, D.C. Bar No. 924092
Chief, Civil Division

 /s/ *April Denise Seabrook*
APRIL DENISE SEABROOK, D.C. Bar No. 993730
Assistant United States Attorney
555 Fourth Street N.W.
Washington, D.C. 20530
Tel: 202-252-2525
April.Seabrook@usdoj.gov

*Counsel for DOJ*